## WHITE v STATE

Ohio Appeals, 4th Dist, Meigs Co

Decided Jan 14, 1933

Ralston Russell, Pomeroy, for plaintiff in error.

Cedric W. Clark, Pomeroy, Pros. Atty., for the State.

MAUCK, PJ.

There is but one question in the case that we deem of any importance, and that is whether the instructions to the jury were erroneous. The complaint of the instructions runs to a single sentence as follows: "The question of his knowledge of her being in a pregnant condition when he left her is not material the court says to you in this case, and the rulings of the court have shown that to be the court's position."

The defendant had testified that at the time he is charged with having abandoned his wife he did not know that she was pregnant. There is thus clearly raised the question whether or not the husband, ignorant of his wife's pregnancy, is guilty of a criminal offense when he abandons her in that condition.

The section of the General Code involved is §13009 GC, which so far as pertinent provides that whoever, being the husband of a pregnant woman, leaves with intent to abandon such pregnant woman, shall be imprisoned. The statute does not in terms make guilty knowledge an essential of the crime defined. There are many cases, however, that hold guilty knowledge to be necessary for the accomplishment of a crime although the statute does not charge that the act in question was knowingly done.

In **Anderson v State, 7 Ohio, 250, pt. 2,** it was held that one charged with publishing a forged contract could not be held unless he had knowledge of the forgery.

In **Birney v State, 8 Ohio, 230,** the defendant was convicted of concealing a slave. The court held that, while the statute omitted scienter as an element of the offense, the defendant nevertheless could not be held without proof that he knew the party to be a slave.

In **Miller and Gibson v State, 3 Oh St 475,** it was decided that one charged with selling liquor to a minor could not be held therefor unless it were averred and proved that the seller knew the buyer to be a minor, and that one charged with selling liquor to a person in the habit of getting intoxicated was only liable in case he knew that the buyer was so habited. The doctrine of this last case was reaffirmed in **Crabtree v State, 30 Oh St 382,** and in **Farrell v State, 32 Oh St 456, 30 Am. Rep. 614.**

In **Kilbourne v State, 84 Oh St 247, 95 NE 824, 35 L.R.A. (N.S.) 766,** the Supreme Court reviewed and approved this line of authorities, and held unconstitutional an act that undertook to punish one who

bought and received certain articles likely to be stolen from railroad yards because the statute did not require guilty knowledge on the part of such buyer.

In **State v Cameron, 91 Oh St 50, 109 NE 584**, the court held that an aider and abettor was not liable criminally unless he had knowledge of the criminal nature of the acts of his principal, and then the court says, at **page 60 of 91 Oh St**, 109 NE 584, 587:

"Guilty knowledge is an essential ingredient of crime. **Birney v The State, 8 Ohio, 230; Kilbourne v The State, 84 Oh St 247, 253, et seq., 95 NE 824, 35 L.R.A. (N.S.) 766.**

"The instances in which it is not necessary to affirmatively aver such knowledge are those in which the declared purpose of the statute discloses the legislative intent to the contrary, as in the case of the sale of adulterated food."

In neither the Kilbourne case nor Cameron case is direct reference made to **State v Kelly, 50 Oh St 166, 43 NE 163**, except that in the Cameron case it indicates that the legislative intent to dispense with scienter is evident in the case of the sale of adulterated food. In the Kelly case the court was considering a statute that made it unlawful to sell an article of adulterated food, and it was claimed that the offense could not be complete unless the vendor had knowledge of the adulteration. The court held this position unsound, that the purpose of the legislation was to prevent the adulteration of food and drugs and not to punish any supposed moral turpitude behind the sale of such food and drugs, and that the act would have been rendered practically useless and its purpose wholly defeated if the state were required to prove that the seller of an adulterated article had knowledge of its adulteration.

In **Zent v State, 3 Oh Ap 473**, it was decided that it was unnecessary in a case of rape with consent to prove that the defendant had knowledge that the girl was under sixteen years of age.

In the Kelly case the Supreme Court followed the rule laid down in Commonwealth v Murphy, 165 Mass. 66, 42 NE 504, 505, 30 L.R.A. 734, 52 Am. St. Rep. 496, which was a case of rape with consent, where the Massachusetts court said: "Considering the nature of the offense, the purpose to be accomplished, the practical methods available for the enforcement of the law, and such other matters as throw light upon the meaning of the language, the question in interpreting a criminal statute is whether the intention of the legislature was to make knowledge of the facts an essential element of the offense, or put upon every one the burden of finding out whether his contemplated act is prohibited, and of refraining from it if it is."

The sound doctrine underlying the rule that guilty knowledge is not required to accomplish the crime of rape with consent is that the act of the accused is at best an immoral one, and that he cannot enter upon the accomplishment of an admittedly immoral act except at his peril, and if in law his act is in fact a felony he must suffer the consequences thereof although so far as his actual knowledge was concerned he may not have known the enormity of the offense of which he is guilty. By like reasoning we take the view that a husband abandoning his wife is guilty of wrongdoing. It is a violation of his civil duty. He is charged with her support and protection. If he abandons her, he does so at his peril, and, if she be in fact at the time pregnant, though he may not have known it, he cannot plead that ignorance as a defense. He must make sure of his ground when he commits the simple wrong of leaving her at all.

Sec 13009 GC was originally a part of an act entitled "An Act to compel parents to maintain their children." (99 Ohio Laws, p. 228). Without attempting to analyze the various sections of that act, it is sufficient to say that both the terms and title thereof disclose the legislative intent to protect children in being and unborn children from abandonment by their parents. The purpose of the act was not to penalize the moral delinquencies of parents, but it was to secure for children directly, and the public indirectly, the support which natural and civil law alike require parents to afford their children. So clearly was this the case that, although the accused might be found guilty and sentenced to imprisonment in the penitentiary, provision was made for suspending sentence to the penitentiary if the future support of the child or children was assured.

We conclude, therefore, that in this case, even more clearly than in the Kelly case, the Legislature has expressed the purpose of the act to be to compel the maintenance of children, and that, when the accused is brought within the letter of the law, he cannot exculpate himself by showing his ignorance of the character of his act.

The judgment is affirmed.

MIDDLETON and BLOSSER, JJ, concur.