The State of Ohio, Appellee, *v.* Williams, Appellant.

(Nos. 480, 481 and 482—Decided October 20, 1952.)

*Mr. Thomas F. Dewey,* prosecuting attorney, *Mr. C. William O'Neill,* attorney general, and *Mr. Ralph N. Mahaffey,* for appellee.

*Mr. Adrian B. Fink, Jr.,* for appellant.

Fess, J. These are appeals on questions of law from judgments of the Common Pleas Court, affirming the sentences and judgments of the justice of the peace of Washington township, Sandusky county, Ohio, after an appeal therefrom to the Common Pleas Court. The three cases were tried in each court upon an agreed statement of facts.

On August 1, 1951, at about 8 p. m., the defendant was driving a truck bearing Michigan license plates,

enroute from Venice, Ohio, to Detroit, Michigan. While stopped for a red traffic light in Fremont, Ohio, a man in a uniform wearing an Ohio game protector's badge accosted the defendant and asked him if he was carrying fish. The defendant having answered in the affirmative, upon request of the officer, the defendant drove the truck to the state highway garage where the defendant assisted the officer in inspecting the contents of the truck. The inspection revealed that the truck contained sixty-three 100-pound boxes of fish, of which 25 boxes were found to contain catfish in which more than 10 per cent by weight were found to be less than 15 inches in length.

The defendant truck driver had no knowledge of the contents of any of the boxes other than from the bill of lading, which contained the words, "2500 cat." The truck had been loaded by employees of the Cold Creek Fish Company of Venice, Ohio, and no inspection of the shipment had been made by the driver prior to or at the time of its loading In argument it was stated that the fish in the boxes were covered with ice.

After an inspection by five game protectors and the defendant, which lasted from 8 p. m. until 2 a. m., the defendant was arrested on 25 charges of violating Section 1429, General Code, presumably one charge for each of the 25 boxes, and, thereafter, was released from jail upon giving bond of $2,500. He was charged in the affidavits with possession of undersized fish. Upon stipulation of the facts, the cases were tried before the justice and the Common Pleas Court on three of the charges. The defendant was found guilty and fined $25 upon each of the three charges and was assessed the costs. The remaining 22 charges are before the justice of peace, pending these appeals.

The principal error assigned in these appeals is that, in the absence of proof that the defendant had knowl-

edge of the fact that he had possession of undersized fish, there could be no conviction.

Section 1429, General Code, provides, in part:

"No person shall take, catch or have in possession * * * a catfish less than fifteen inches in length * * *. All such fish caught or taken of a less length than herein prescribed shall be immediately released alive with as little injury as possible while the nets are being lifted or hauled.

"* * *

"No person shall buy, sell, barter, give away, deliver, ship or have in possession an undersized sturgeon or any package, container or quantity with more than ten percent by weight of undersized fish or any other species either round or filleted mentioned in this section."

Section 1390, General Code, defines "possession" as "both actual and constructive possession and any control of things referred to."

Under the blanket penalty clause in Section 1454, General Code, a fine is imposed of not less than $15 or more than $200, in addition to costs.

It is a fundamental axiom that ignorance of the law is no defense for a violation of law. However, ignorance or mistake of fact may be proved to negative intent. But where knowledge is irrelevant, ignorance or mistake of fact is no defense, and under certain statutes defining an offense irrespective of knowledge or intent, lack of knowledge is no defense. 1 Wharton's Criminal Law, 142 to 159, Sections 102 to 112.

In 1837, the abolishionist, James G. Birney, was indicted for harboring a fugitive slave. The statute did not, in terms, make *scienter* or intent essential to the offense. The Supreme Court held, nevertheless, that it was essential to prove that defendant knew that the mulatto girl was a fugitive slave. *Birney* v. *State*, 8

Ohio, 230. In the opinion, Judge Wood referred to *Anderson* v. *State,* 7 Ohio, pt. 2, 250, which held that criminality could not exist without knowledge that the instrument upon which the defendant was indicted was a forgery. In the opinion it is stated further:

"We know of no case where positive action is held criminal, unless the intention accompanies the act, either expressly or necessarily inferred from the act itself. '*Ignorantia facti* doth excuse, for such an ignorance, many times, makes the act itself morally involuntary.' 1 Hales P. C., 42."

In 1854, in *Miller & Gibson* v. *State,* 3 Ohio St., 475, the Supreme Court held that to convict for a violation of an act prohibiting the sale of liquor to a minor, it was necessary to aver in the information and prove on the trial that the seller knew the buyer to be a minor. The act under which the prosecution was brought, 52 Ohio Laws, 153, made no reference to knowledge or intent.

In *Crabtree* v. *State* (1876), 30 Ohio St., 382, the Supreme Court quoted from Bishop on Statutory Crimes, page 1021, as follows:

" 'And when this good faith and this due care do exist, and there is no fault or carelessness of any kind, and what is done is such as would be proper and just were the fact what it is thus honestly believed to be, there is no principle known to our criminal jurisprudence by which this morally innocent person can be condemned because of the existence of a fact which he did not know and could not ascertain. On the other hand, to condemn him would be to violate those principles which constitute the very foundation of our criminal jurisprudence. Honest error of a fact is as universal an excuse for what would be otherwise a criminal act as insanity.' "

In commenting on the quotation from Bishop, the court said:

"This may be a strong, but is a just statement of the excusing principle in our criminal jurisprudence. It shows the necessity of allowing a person accused of knowingly violating the law to prove on the trial the pains he took to ascertain the truth about the fact or transaction that would, if knowingly done, criminate him, as well as the further necessity of allowing him to give in evidence the nature and extent of the information thus obtained, and upon which he claimed to have acted."

See, also, *Farrell* v. *State,* 32 Ohio St., 456, 30 Am. Rep., 614.

In *Kilbourne* v. *State* (1911), 84 Ohio St., 247, 95 N. E., 824, 35 L. R. A. (N. S.), 766, upon authority of the *Birney, Miller-Gibson* and *Farrell cases,* the court held to be violative of the Constitution an act providing that whoever buys, receives, or unlawfully has in his possession certain articles removed from railway cars, regardless of knowledge, shall, upon conviction, be imprisoned. In its opinion, the court quoted from the *Birney case* as follows:

" 'It is true that the statute upon which the indictment is founded omits *scienter,* and the indictment avers all the facts enumerated in the statute. But this is not sufficient; it can not be assumed that an act, which, independent of positive enactment, involves no moral wrong, nay an act that in many cases would be highly praiseworthy, should be made grievously criminal when performed in total unconsciousness of the facts that infect it with crime.' "

In *State* v. *Cameron,* 91 Ohio St., 50, 109 N. E., 584, the Supreme Court again said that guilty knowledge is an essential ingredient of crime, citing the *Birney* and *Kilbourne cases* and distinguishing the adulterated food cases.

In *Holt* v. *State,* 107 Ohio St., 307, 140 N. E., 349, the second paragraph of the syllabus reads as follows:

"In an indictment under Section 12402-1, General Code, it is not necessary to aver that the defendant knew the deceased was an officer, as named in the statute, since the words 'purposely' and 'wilfully' carry the meaning of designedly and knowingly. *It is, however, necessary to prove such knowledge upon trial.*" (Italics supplied.)

So far as we have been able to ascertain, none of the above cases has been overruled or modified.

On the other hand, there is authority in Ohio for the proposition that where a statute makes an act an offense, regardless of guilty knowledge, ignorance of fact, no matter how sincere, is not a defense to a charge predicated upon such statute.

In *State* v. *Kelly* (1896), 54 Ohio St., 166, 43 N. E., 163, the court held that in a prosecution for the sale of adulterated molasses, it was not a defense that the accused was ignorant of the adulteration of the article sold. In its opinion, the court concluded:

"In the enactment of this statute it was the evident purpose of the General Assembly to protect the public against the harmful consequences of the sales of adulterated food and drugs, and, to the end that its purpose might not be defeated, to require the seller at his peril to know that the article which he offers for sale is not adulterated, or to demand of those from whom he purchases indemnity against the penalties that may be imposed upon him because of their concealment of the adulteration of the articles."

The decision in the *Kelly case* was followed in *Meyer* v. *State,* 54 Ohio St., 242, 43 N. E., 164; *Stranahan Bros. Catering Co.* v. *Coit,* 55 Ohio St., 398, 418, 45 N. E., 634, 4 L. R. A. (N. S.), 506; *State* v. *Rippeth,* 71 Ohio St., 85, 72 N. E., 298; *Portage Markets Co.* v. *George,* 111 Ohio St., 775, 146 N. E., 283; and *Taugher* v. *Ling,* 127 Ohio St., 142, 187 N. E., 19. In *Kendall* v. *State,* 113 Ohio St., 111, 148 N. E., 367, the principle of

the *Kelly case* was followed in a case involving the employment of a child under 14 years of age in a place of amusement. It has been held also in the following cases that lack of knowledge is no defense: *White* v. *State,* 44 Ohio App., 331, 185 N. E., 64 (abandoning pregnant wife); *State* v. *Kominis,* 73 Ohio App., 204, 55 N. E. (2d), 344 (sale of liquor to child under 18 inducing delinquency. In that case, the court overlooked *Miller & Gibson* v. *State, supra*); and *State* v. *Weisberg,* 74 Ohio App., 91, 55 N. E. (2d), 870 (selling by false or short weight).

In the interest of reconciling the conflict between the *Birney* and *Kilbourne cases,* and the *Kelly case* and subsequent decisions, it is concluded that in the case of a statute defining an offense regardless of *scienter* where the means of knowledge are available to the accused or the act is such as to impose a duty (in the interest of the public weal) upon the offender at his peril to ascertain the fact of violation, knowledge is not an essential element to support conviction. In case an offender has the means of knowledge, *scienter* is inferred by reason thereof. In the cases where the offender acts at his peril, the duty is imposed upon him to ascertain the facts from which, likewise, knowledge may be inferred. For example, in the case of the sale of adulterated food or beverages, the means of knowledge are within the cognizance of the offender and not the state. *Altschul* v. *State,* 8 C. C., 214, 216, 4 C. D., 402. Purpose and knowledge, except where they are indicated by the character of the forbidden act, are, in most cases, insusceptible of proof. *State* v. *Kelly, supra,* at page 178. There are also certain types of heinous crime where intent is presumed from proof of the commission of the act. From personal experience, the writer knows that a judge enroute to his office and cogitating over an opinion he is about to write, who runs a red traffic light, may be wholly ob-

livious of the warning signal but, nevertheless, in the interest of protecting the public, he is not absolved from criminal liability on account of his lack of knowledge. However, the Supreme Court has said:

"We know of no case where positive action is held criminal, unless the intention accompanies the act either expressly or necessarily inferred from the act itself." *Kilbourne* v. *State, supra,* at page 254.

On the other hand, we conclude further that upon a charge of violation of a statute not in terms including *scienter,* where the means of knowledge are not at hand or the circumstances are such that the accused is not bound at his peril to know the fact and obey the law, knowledge of the fact is essential to support a conviction.

The fish and game act was enacted by the General Assembly under the police power for the laudable purpose of protecting and preserving wild life for the benefit of the people of Ohio. In enacting Section 1429, General Code, the Legislature prescribed the legal weight and size of fish and prohibited the dealing and shipping of undersized fish. It provided also that no person shall have possession, actual or constructive, of any undersized fish. A perusal of the section and other provisions of the act leads to the assumption that when the General Assembly employed the term, "possession," its thoughts were directed to undersized fish in a fisherman's boat, or fish on the dock, or in the fish house, where the undersize would be obvious and apparent upon casual inspection. It can not be assumed that the Legislature intended to denounce as criminal the possession of small fish by a person such as the defendant herein, who did not have knowledge of the undersize or the means of acquiring such knowledge.

Every reasonable presumption should be indulged in favor of the constitutionality of a statute. It is our

bounden duty to resolve every reasonable doubt in favor of the validity of this act and to construe it liberally in order to save it. In a case such as these, where the validity of the act is assailed and where there may be two possible interpretations, the court must adopt the one which will bring the act into harmony with the Constitution. It is well settled also that where, by the terms of a statute, several classes of persons are apparently included within its operation, and, as to some of them, its enforcement would render the act unconstitutional, and as to others not, the act will not for that reason be declared unconstitutional, but it will be presumed that the legislative intent was to apply the statute to the latter class only. *Hirn* v. *State,* 1 Ohio St., 15; *State, ex rel.,* v. *Frame, Auditor,* 39 Ohio St., 399; *Anderson* v. *Brewster,* 44 Ohio St., 576, 9 N. E., 683; *State* v. *Rouch,* 47 Ohio St., 478, 484, 25 N. E., 59.

Furthermore, the construction of a statute depends upon its operation and effect, and not upon the form which it may be made to assume. *Butzman* v. *Whitbeck,* 42 Ohio St., 223; *Hill* v. *Micham,* 116 Ohio St., 549, 157 N. E., 13. It is the duty of the courts in interpreting statutes, unless restrained by the letter, to adopt that view which will avoid absurd consequences, injustice, or great inconvenience, as none of these can be presumed to have been within the legislative intent. *Moore* v. *Given,* 39 Ohio St., 661; *Hill* v. *Micham, supra.*

In *Margate Pier Co.* v. *Hannam,* 3 Barnewall Baldersons Reports, 266, 270, Chief Justice Abbott quoted from Lord Coke as follows:

" 'Acts of Parliament are to be so construed, as no man that is innocent, or free from wrong, be by a literal construction punished or endamaged.' "

See, also, *Church of The Holy Trinity* v. *United States,* 143 U. S., 457, 36 L. Ed., 226, 12 S. Ct., 511.

In the instant cases, it is stipulated that the defend-

ant made no inspection of his cargo prior to its loading and had no knowledge that the shipment contained undersized fish. It was unreasonable and impractical to require him to inspect the shipment. As we construe Section 1429, General Code, the Legislature had no intention or purpose to make an innocent person criminally liable for the possession of undersized fish. This conclusion renders it unnecessary for us to discuss or to determine the other errors assigned.

The judgments of the Common Pleas Court and the justice court are reversed, and defendant is discharged.

*Judgments reversed.*

CONN and SAVORD, JJ., concur.