THE STATE OF OHIO, APPELLEE, *v.* PINKNEY, APPELLANT.

[Cite as State *v.* Pinkney (1988), 36 Ohio St. 3d 190.]

(No. 87-831—Decided May 4, 1988.)

*John T. Corrigan,* prosecuting attorney, and *Thomas H. Terry III,* for appellee.

*James R. Willis, Gerald S. Gold* and *Robert A. Ranallo,* for appellant.

GLASSER, J. Appellant's first of seven propositions of law asserts that the trial court erred in not requiring the state to provide rebuttal evidence to support its cross-examination of a critical defense witness. Appellant's witness, Martin J. Hughes, testified on direct examination that he had approached Pinkney about the possibility of procuring directors' liability insurance for members of the board. Upon cross-examination, counsel for the state asked Hughes if he recalled when and where such request was made and whether Hughes had been able to recall such when subsequently questioned by detectives from the sheriff's office.[2]

Appellant contends that this line of

---

[2] The testimony at issue between Thomas Terry, the assistant county prosecutor, conducting cross-examination on behalf of the state, and Martin Hughes, witness for the appellant, is as follows:

"BY MR. TERRY:

"Q. You have a fairly good memory, don't you, Mr. Hughes?

"A. I hope that I'm blessed with one.

"Q. You specifically recall that you are the one who asked Arnold Pinkney to go out and get this policy of directors liability insurance, correct?

"A. I asked Mr. Pinkney to do that, yes.

"Q. Do you have any idea what meeting — what day that would be?

"A. No, I do not recall.

"* * *

"Q. You did this at a meeting?

"A. Yes.

"* * *

"Q. Do you recall having a conversation with Detective James Fuerst of the Sheriff's Office of this county?

"A. There were two detectives that came to my office. I don't recall their

questioning was improper once it became apparent that the state was not going to offer any rebuttal evidence such as the statements or testimony of the detectives. We do not agree.

Initially we note, as did the appellate court, that, although appellant referred to this alleged error in closing argument, he failed to timely interpose an objection. Such omission constitutes a waiver of the issue upon review. *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1364, vacated on other grounds (1978), 438 U.S. 911; see, also, *State* v. *Young* (1908), 77 Ohio St. 529, 83 N.E. 898. Notwithstanding the waiver, we note that the state's line of questioning involved the ability of a witness to recall certain conversations. Clearly, the credibility of a witness may be affected by his ability to state correctly and clearly the facts as he remembers them and as they took place. Hence, the clearness or want of clearness of recollection of a witness as affecting that witness's credibility is a proper subject for cross-examination. Additionally, the presentation of collateral evidence relative to the credibility of a witness, as opposed to a party, is disfavored as it tends to divert the attention of the jury and waste judicial time. See *State* v. *Kehn* (1977), 50 Ohio St. 2d 11, 4 O.O. 3d 74, 361 N.E. 2d 1330. Hence, the state's line of questioning was not improper and appellant's first proposition of law is overruled.

Appellant alleges as his second proposition of law that the trial court violated his right to the effective assistance of counsel by prohibiting defense counsel from making direct reference to the applicable law in

---

names, but I did have a discussion with one or two.

"Q. On July 27, 1984?

"A. I don't recall the date.

"Q. Do you recall discussing this same matter with them?

"A. I had a very brief discussion with them. I don't think I went into the detail that I have here.

"Q. Do you recall being asked by Detective Fuerst whether you had any recollection of a meeting where Arnold Pinkney was requested to provide insurance?

"A. I don't recall any discussion about that, but I know I did ask Arnold if he could get insurance for us.

"Q. Do you recall telling Detective Fuerst that you couldn't recall any such meeting when you were — when he talked to you on July 27, 1984?

"A. No.

"Q. And yet you can recall this meeting which occurred in 1980 when you sit here and testify in 1985; is that correct, sir?

"A. Repeat the question now?

"Q. You talked to — last year, 1984, July 27th — two representatives of the Sheriff's Office. You could not recall the meeting where Pinkney was requested to go out and get insurance, and yet now you have a recollection of that. Not only do you have a recollection of a meeting which occurred apparently in 1980, but you are the primary *actor* in that; is that your testimony?

"A. I precisely recall that I discussed the matter with Arnold Pinkney, but I cannot give you the precise date.

"Q. But you cannot — you didn't give any date to the Sheriff's detectives when they talked to you, because you didn't recall that conversation at all, did you?

"A. I didn't recall the date of the conversation.

"Q. You didn't recall the conversation. Did you tell them that you are the one that asked Arnold Pinkney to go out and get the insurance when they asked you about it?

"A. I don't recall whether I did or not."

counsel's summation. Specifically, appellant argues that the trial court erred in not allowing counsel to read to the jury directly from the text of the applicable statutory section or the actual charge the court had indicated would be given to the jury. Appellant asserts that such denial impeded counsel's ability to emphasize these points of law which were critical to the defense.

As authority for this proposition appellant relies on *United States* v. *Sawyer* (C.A.D.C. 1971), 443 F. 2d 712, wherein the court stated that although a trial court has broad discretion in controlling the scope of argument, that "discretion is abused, however, if the court prevents defense counsel from making a point essential to the defense." *Id.* at 713. Hence, if appellant's counsel had been totally barred from arguing a point essential to the defense, such denial would constitute an abuse of discretion. In the instant case, however, defense counsel was not totally barred from arguing any essential points. A review of the record indicates that while the trial judge did not allow defense counsel to read directly from the statute or the jury charge, counsel was permitted to comment on and summarize both.[3] As in *Sawyer, supra,* counsel was able to make and emphasize the critical points in a form that the trial court found acceptable. Accordingly, we find no prejudice and appellant's second proposition of law is overruled.

Appellant asserts in his third proposition of law that the trial court erred in allowing the prosecutor to argue, in essence, that appellant would not have been indicted by the grand jury if the exemptions in R.C. 2921.42(C)[4] were applicable and that any argument con-

---

[3] The following exchange took place between the court and one of defendant's counsel:

"MR. WILLIS: Now the statute, the Court will of course give it to you in his instructions, sets forth several exemptions, even where there are violations. We don't concede there is [*sic*] violations. I think the point is well made by Mr. Gold, but the statute says that this offense, set forth in [the] particular section of the statute under which this indictment is based, does not apply when all of the following apply. One, the subject of the public contract is necessary services. I don't think there is any dispute that insurance policy is a necessary service.

"MR. TERRY: Objection, Your Honor.

"THE COURT: Overruled. I am going to ask you not to stand there and read the statute, but certainly you can comment.

"MR. WILLIS: Thank you, Your Honor.

"\* \* \*

"MR. WILLIS: May I approach the bench for a complication [*sic*], Your Honor?

"THE COURT: I don't think it is necessary.

"MR. WILLIS: The Court indicated it will charge the jury. I can comment on the Court's charge?

"THE COURT: Certainly.

"MR. WILLIS: The Court will tell you in its charge that the subject —

"MR. TERRY: Objection, Judge.

"THE COURT: I prefer you not read it. You can summarize it.

"MR. WILLIS: I'm not reading.

"THE COURT: We all thought you were going to read from it.

"MR. WILLIS: I wasn't going to do that.

"THE COURT: I stand corrected. If you will, summarize it correctly and then you may comment.

"MR. WILLIS: Thank you."

Hence, trial counsel was not prevented from making any points essential to the defense.

[4] R.C. 2921.42(C) states:

"This section does not apply to a public contract in which a public servant, member of his family, or one of his business associates has an interest, when all of the following apply:

cerning these exemptions had already been decided against the defendant. The portion of the state's closing argument in dispute included the following:

"What else could you possibly want here? He knew that he had taken an oath. He knew that he had a trust. He knew the money wasn't his to do with whatever he pleased. He went ahead, however, and put himself in a position where he was going to take it anyway.

"You've heard about certain exemptions to the statute. We wouldn't be here if there had been an arm's length transaction —

"MR. WILLIS: Objection.

"THE COURT: Overruled.

"MR. TERRY: If everybody knew who they were dealing with or what they were dealing with and if there had been a properly made motion or resolution and Mr. Pinkney had not voted on it, or if it could be shown that the only insurance company in the whole wide world or at least in this country or service area where you could get the policy of insurance to cover the members of a Port Authority for whatever mistakes they might make as Port Authority members could only be obtained by the Pinkney-Perry Insurance Agency."

Upon review of the above-cited passage, we are hard-pressed to construe such comments as implying that appellant would not have been indicted by the grand jury if he were not guilty. Rather, placing the prosecutor's comments in context it appears that they were aimed at arguing that the "arm's length" transaction exception of R.C. 2921.42(C)(4) was not demonstrated by the facts adduced at trial. No reference to the grand jury was made in counsel's closing argument nor was there any implication that grand jury proceedings are determinative of guilt. As there is nothing in the record to support appellant's contentions, his third proposition of law is without merit and is overruled.

Appellant's fourth proposition of law is that due process was denied him when defense counsel was prevented from making certain arguments to the jury. Further, appellant takes exception to certain allegedly gratuitous remarks made by the trial court that tended to disparage or belittle counsel in the presence of the jury.

Appellant contends that the trial court's failure to take curative action after the state failed to introduce rebuttal evidence after questioning defense witness Martin Hughes foreclosed appellant's opportunity to deal with this subject. Appellant contends that the trial court should have given a curative instruction pursuant to *United States* v. *DeFillipo* (C.A. 2, 1979), 590 F. 2d 1228, wherein the

---

"(1) The subject of the public contract is necessary supplies or services for the political subdivision or governmental agency or instrumentality involved;

"(2) The supplies or services are unobtainable elsewhere for the same or lower cost, or are being furnished to the political subdivision or governmental agency or instrumentality as part of a continuing course of dealing established prior to the public servant's becoming associated with the political subdivision or governmental agency or instrumentality involved;

"(3) The treatment accorded the political subdivision or governmental agency or instrumentality is either preferential to or the same as that accorded to other customers or clients in similar transactions;

"(4) The entire transaction is conducted at arm's length, with full knowledge by the political subdivision or governmental agency or instrumentality involved, of the interest of the public servant, member of his family, or business associate, and the public servant takes no part in the deliberations or decision of the political subdivision or governmental agency or instrumentality with respect to the public contract."

court stated that a "jury may not presume the truthfulness of what the lawyer assumes in a question unless the assumption is supported in the record."[5] *Id.* at 1239.

The prosecution did not undertake to assume any outside facts nor attempt to have the jury consider such facts as true. As we noted in addressing appellant's first proposition of law, the challenged line of questioning was a proper vehicle to test the ability of the witness to recall certain events and did not create a false inference prejudicial to the defense. Accordingly, no rebuttal evidence was required and *DeFillipo* has no application to the instant case. Moreover, defense counsel never requested a *DeFillipo* instruction and failed to object to the charge given based on lack of such instruction. See Crim. R. 30.

Appellant further states that the trial court prevented defense counsel from presenting an argument concerning lack of the requisite element of criminal intent. A review of the transcript indicates that the argument defense counsel was attempting to make was a misapplication of the applicable statute. Specifically, counsel was attempting to explain what qualified as an illegal interest[6] and in so doing was misstating the law. The

---

[5] The applicable portion of the jury charge in *DeFillipo* read as follows:

"At times, the lawyer on cross-examination, incorporated a statement, assuming a certain fact to be so, and asked the witness whether it was so. Well, if it is not otherwise supported in the record, you may not consider that fact as true. For example, in one of the questions, one of the lawyers asked the witness whether it was not true that he had told Mr. Sabilius, or a name something like that, that he would get even with one of the defendants. The witness said, no, he never said that. Well, cross-examination is a tool for revealing the truth and the tools that are used are designed to do it, but do not necessarily perform the task with every question. As I say, it was a proper question, but once the witness said, no, it didn't happen, never said it, you may not assume the contrary unless there is evidence in the record otherwise, outside that question, that supports the assumed fact." *Id.* at 1239.

[6] "* * * When I looked at that check, immediately something very significant occurred to me. I think it is significant because it tells some of us something.

"You saw Mr. Ehle testify here in this case, and he testified that he signed his name to that check, and he felt that it was all right for him to do so. Then the check got to Mr. Pinkney, and he signed his name to it, and but for the fortuitous circumstances that he was selected rather than somebody else who could have authorized the same check. I guess that is why we are here.

"Now, they are saying that when Mr. Pinkney signed that check, he knew it was wrong and he knew he was going to get an interest in the proceeds of that check. That is what they are saying.

"Well, what occurred to me was what about Mr. Ehle? Didn't he get an interest? Didn't he? He got insurance that was paid for out of the proceeds of that check. He got coverage, okay?

"Now, if Mr. Ehle signed a check knowing that he was going to get some coverage. out — you know, this was going to pay for some coverage to protect him. That is an interest, and similar to the interest that they would say motivated Arnold Pinkney in signing the check, okay? It is admitted that Pinkney was going to get coverage, too, okay? But that is what is the difference. An interest is an interest.

"If the interest is illegal, it was not legal for Mr. Pinkney to get a segment of the proceeds of the policy, theoretically, and coverage, and it was not illegal for Mr. Ehle to get merely coverage. Both are interests. One just happens to be a couple hundred dollars bigger than the other. Now, maybe —

"MR. TERRY: Objection, Judge. He's misstating the law, clearly.

"MR. WILLIS: That is not true, Judge.

trial court merely sustained the state's objection to these misstatements and asked defense counsel to limit his remarks to the facts and not the law. This is certainly within the discretion of the trial court and did not tend to disparage or belittle counsel. This proposition of law is without merit and therefore is overruled.

Appellant asserts as his fifth proposition of law that the trial court erred in failing to give the instructions proffered by defense counsel. The instructions submitted by appellant read as follows:

"The word 'knowingly' as used in these instructions imports a knowledge of the existence of the facts that make for the crime charged in this indictment. And, the word 'knowingly' requires in its meaning, knowledge of the unlawfulness of the acts performed by the defendant, if indeed any of his acts would otherwise be illegal — that is, would be illegal if performed with such knowledge.

"(a) Unless the defendant, Arnold Pinkney, had the required knowledge, as that term has been defined to you, he cannot be guilty of the charge made in this indictment.

"(b) In determining whether Arnold Pinkney had the required knowledge the jury must consider whether he acted under mistake of fact regarding whether it was proper for him to supply his signature as the second signature to the check made payable to the Pinkney-Perry Insurance Agency, which check represented payment due that Agency for insurance coverage that the Port Authority was authorized to provide for its officers and directors.

"(c) If the defendant had a[n] honest belief arrived at in good faith, and he acted on the basis of the facts as he believed them to be, then he lacked the required knowledge that is an essential element of the crime charged in this indictment, if indeed any act performed by him would have otherwise been unlawful or illegal."

Appellant argues, in essence, that the court erred by refusing to instruct the jury that proof of a specific intent to violate the law is required for a conviction. As authority for this proposition appellant relies on *Liparota* v. *United States* (1985), 471 U.S. 419, and *State* v. *Snowden* (1982), 7 Ohio App. 3d 358, 7 OBR 458, 455 N.E. 2d 1058. Neither case, however, is dispositive of the case *sub judice*.

*Liparota* involved a federal statute making it a crime to possess food stamps in any manner not authorized by the statute or regulations. Section 2024(b)(1), Title 7, U.S. Code. The court held that in the absence of anything to the contrary in the statute, or in the legislative history, the statute required proof that the accused knew his conduct to be unauthorized. In the instant case, R.C. 2921.42, the involved conflict of interest statute, prohibits a public official from "knowingly" engaging in certain proscribed conduct. The state of Ohio, however, has defined "knowingly" in R.C. 2901.22(B) as follows:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is

---

"THE COURT: I would ask — you are bordering on the law in a number of areas, Mr. Willis, and I will request —

"MR. WILLIS: May I approach the bench, Your Honor?

"THE COURT: No, I don't think so. I'll ask you to bring your comments back to the facts. You know what the law is and you know what the facts are. Please observe that."

aware that such circumstances probably exist."

We note that the instructions given the jury as to the required mental state mirrored the wording of R.C. 2901.22(B). Unlike the situation in *Liparota,* by statutorily defining "knowingly," the General Assembly has made it unnecessary for the prosecution to establish that appellant had actual knowledge that his actions were illegal in order to establish the element of "knowingly."

The concept of "knowledge" as it pertains to the instant case does not encompass awareness of the law. It is an ancient maxim that all are conclusively presumed to know the law. See 42 Ohio Jurisprudence 3d (1983) 401, Evidence and Witnesses, Section 143, and cases cited therein. To hold otherwise would be to lend credence to the defense of ignorance of the law for any offense in which "knowledge" is an element. Knowledge that certain conduct is unlawful is not a necessary element for conviction based on actions done "knowingly." *E.g., State* v. *Bissantz* (1982), 3 Ohio App. 3d 108, 3 OBR 123, 444 N.E. 2d 92. We readily acknowledge that any personal reward realized by appellant was minimal and that there was apparently no attempt at deception. These factors, however, do not relate to guilt or innocence but to sentencing and were obviously taken into account by the trial court.

Appellant's reliance on *State* v. *Snowden, supra,* is equally misplaced. As was noted by the appellate court below, the *Snowden* court held that proof of mistake of fact can serve to negate the element of "knowingly" in a specific intent crime. Appellant's proffered instructions, however, describe a mistake-of-law defense, not a mistake-of-fact defense. It is well-settled that the mistake-of-law defense is not recognized in Ohio. *State* v. *Williams* (1952), 94 Ohio App. 249, 51 O.O. 414, 415, 115 N.E. 2d 36, 39; *State* v. *Coyne* (1983), 10 Ohio Misc. 2d 9, 10, 10 OBR 162, 460 N.E. 2d 1171, 1172.

We hold that knowledge by a public official that certain conduct is unlawful is not an element of the crime of his "knowingly" authorizing a public contract in which he has an interest, as set forth in R.C. 2921.42(A). Accordingly, appellant's fifth proposition of law is overruled.

In his sixth proposition of law appellant argues that the court's failure to give the proper instructions as discussed *supra* in appellant's fifth proposition of law shifted the burden of proof to appellant to disprove criminal intent.

As we noted above, the state was not required to prove that appellant specifically intended to violate the law. Accordingly, appellant's argument that the trial court erred in not so instructing the jury is specious. If the state bore no such burden of proof it is illogical to argue that the jury instructions served to shift the burden of disproof to appellant.

We agree with appellant's assertion that shifting the burden of proof to a criminal defendant by means of a presumption is prohibited. *Mullaney* v. *Wilbur* (1975), 421 U.S. 684; *Sandstrom* v. *Montana* (1979), 442 U.S. 510; cf. *Patterson* v. *New York* (1977), 432 U.S. 197. The cases which illustrate this principle, however, are distinguishable upon their facts from this cause. There is nothing in the instruction which would lead the jury to presume the existence of the requisite criminal intent. The trial judge read the applicable statute to the jury and properly instructed the jury that the state had the burden of proof on each element of the crime charged. We find that the instructions to the jury were

proper and overrule this proposition of law.

Appellant's seventh and final proposition of law is that the trial court erred in denying appellant's Crim. R. 29(A) motion for judgment of acquittal. Crim. R. 29 provides in pertinent part:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *"

In reviewing the propriety of such a motion, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184, syllabus.

In this proposition of law, appellant contends that the evidence was insufficient to establish that he knowingly authorized the insurance contract. A review of the record indicates that the Port Authority rules and regulations require board authorization of any payment in excess of $5,000 and that any instrument in such amount requires the signature of two officers. Contrary to such regulations, the board did not specifically authorize by resolution or motion the payment for the insurance contract. Nonetheless, appellant in his capacity as board secretary signed the check authorizing payment. The evidence is overwhelming that appellant was aware that the instrument he was signing was payable to his agency and that he would benefit financially. Accordingly, reasonable minds could find that each element of the offense had been proven beyond a reasonable doubt. See *State* v. *Swiger* (1966), 5 Ohio St. 2d 151, 34 O.O. 2d 270, 214 N.E. 2d 417. Appellant's seventh and final proposition of law is, therefore, overruled.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

GLASSER, J., of the Sixth Appellate District, sitting for LOCHER, J.

