OPINION
Dewight White appeals the judgment and sentence of the Court of Common Pleas of Marion County. On September 4, 1998, a jury found the defendant guilty of one count of Escape, a violation of R.C. 2921.34 and a felony of the second degree, and the trial court sentenced the defendant to a term of six years incarceration.
On April 13, 1996, The Cuyahoga County Common Pleas Court convicted defendant Dewight White of a second-degree felony count of burglary, and sentenced him to an indefinite term of three to fifteen years incarceration. Defendant was housed at the Marion Correctional institution, and lived and worked at the institution's minimum-security camp. On October 9, 1997, while defendant was under detention at the Marion Correctional institution, he walked away from the dairy barn at the minimum-security camp, which is not fenced in.
On October 17, 1997, defendant was apprehended near his wife's home in Miami, Florida. He admitted to the arresting officers that he escaped from a corrections facility in Ohio, and stated that he "got tired of having to get up at 4:00 in the morning to milk the cows * * *." Defendant explained that he had left the Marion County facility, run to a nearby railroad and jumped onto a passing train.
He stated that it took him "about four days" to get to Miami.
On March 12, 1998, the Grand Jury of Marion County returned a bill of indictment charging the defendant with one count of Escape. Defendant was arraigned on March 16, 1998, and the trial court appointed S. Fredrick Zeigler as defendant's counsel. Mr. Zeigler apparently prepared a detailed defense based on two theories: the defendant's alleged objection to drug dealing at the Marion Correctional Institution, and a procedural defect in the sentence for defendant's burglary conviction.
The case was set for jury trial on June 29, 1998. After the court issued rulings on several evidentiary issues and immediately prior to trial, the defendant stated that "I would like to withdraw my attorney because there's a lot of things he didn't cover, which I told him he should have covered." The court notified the defendant that he could fire Mr. Zeigler, but that the case would proceed to trial anyway. However, after hearing argument from both the defendant and Mr. Zeigler, the court reluctantly granted a continuance and appointed a different lawyer to handle defendant's case.
 THE COURT: The difficulty I've got is, the thing I see cropping up is no matter who I get for this gentleman I don't think he's going to be satisfied.
All right. We will get you another lawyer.
MR. WHITE: Thank you very much.
 THE COURT: Much against my better judgment and wishes, but — I don't like getting up to Jump Street, getting up to the Go and stopping and restarting. That's the reason I'm somewhat hesitant about doing it.
 But when you're saying that you don't want this lawyer to represent you, and this lawyer's saying he doesn't want to represent you, we're doing it on the record, it doesn't seem to me the sort of thing the Court of Appeals is going to like very much.
 We're gonna need to take him back to the Institution. We're gonna get him another lawyer.
The following day, the court appointed Thomas A. Mathews as defendant's new attorney, and the case was set for trial on August 20, 1998. However, due to a court scheduling conflict, it was continued to September 3, 1998.
On September 3, 1998, defendant appeared prior to trial and told the court that he was unsatisfied with Mr. Mathews' representation and wished to have another new lawyer. Defendant stated that he believed that Mr. Mathews was unprepared. Documents proffered at trial indicate that defendant was upset because Mr. Mathews refused to advance theories that the defendant was insane or that he had pled to the burglary charge under duress. However, other proffered documents indicate that defendant had intentionally planned to fire Mr. Mathews' prior to trial or alternatively to punch Mr. Mathews during the trial in an attempt to provoke a mistrial. Prior to going forward with the case, the court addressed defendant's situation on the record:
 THE COURT: Okay. Well, that's fine. I mean, you don't have to have him represent you. What I'm telling you is is [sic] I'm not gonna give you another lawyer. You have had two lawyers now.
 MR. WHITE: Mr. — the first attorney I had I had a problem with him and I asked for —
THE COURT: Now you got a problem with him.
MR. WHITE: Can I finish, please, sir?
THE COURT: Go ahead.
 MR. WHITE: The I asked for an effective attorney. The new attorney you appoint me do nothing [sic] in my case.
THE COURT: Okay.
 Well, you know, I got a sneaking suspicion that any attorney that we get for you you're gonna have a problem with.
 MR. WHITE: No sir. I'm proving to you right now in front of your face, 15 minutes the maximum time he spoke to me in preparation for a trial.
THE COURT: Okay. Well —
MR. WHITE: That's not effective.
 THE COURT: That doesn't mean that's all he was doing.
 MR. WHITE: That's all he was doing, sir. He spoke to me 15 minutes.
 THE COURT: What I'm saying it there's other ways you prepare for a trial. You talk to other witnesses, you review the file —
 MR. WHITE: He didn't talk to any witness [sic]. He didn't ask me if I had a witness in defense.
THE COURT: You understand what I'm telling you?
 MR. WHITE: I understand you clearly, sir. Can I get the paper back, please?
 THE COURT: What are we gonna do today? One way or another this thing is going to trial today. You want the lawyer or do you want to do it by yourself?
 MR. WHITE: I don't want the lawyer. He prove [sic] to me that he's not gonna fully represent me.
THE COURT: Then you're gonna do it by yourself.
MR. WHITE: I can't do it.
 THE COURT: Okay, then you can sit there and you can listen to it, you understand it [sic]?
MR. WHITE: No, sir.
The case proceeded to trial with defendant representing himself. The defendant chose not to make an opening statement, and declined opportunities to cross-examine the State's witnesses. After a recess in the middle of the State's case, the court again inquired out of the jury's presence as to the defendant's wishes regarding his representation:
 THE COURT: * * * * Mr. White, you've had an opportunity to observe the Morning Session of the Court thus far, and the proceedings thus far. My question to you at this point is do you wish to continue on in the fashion that we're going, or do you wish to exercise your right to have Counsel? We will try to get Mr. Mathews back for you.
 MR. WHITE: Mr. Mathews clearly stated that even if I was paying him, he would not represent me.
THE COURT: Okay.
 If I ask him, he may come back. Do you want me to try to get him for you?
 MR. WHITE: I need counsel, but not Mr. Mathews because he says he's not going to fully represent me.
THE COURT: Okay.
 You understand your choice at this point is to have Mr. Mathews represent you or proceed the way we've been proceeding.
 MR. WHITE: My — I'm recommending the Court to appoint me an effective attorney, not Mr. Mathews, cause [sic] he says he's not going to fully represent me.
The court then gave the defendant the opportunity to execute a waiver of counsel form. The defendant refused to do so. He stated that he needed an attorney, but would not accept Mr. Mathews. At this point the jury was recalled and the prosecution resumed the presentation of its case. Mr. White chose not to object to the admission of evidence or to cross-examine the remainder of the State's witnesses.
After the close of the State's evidence, the prosecutor stated that she had talked to Mr. Mathews several times about the defendant's case. The judge also stated, "for the record":
 * * * I can categorically state that Mr. Mathews and his predecessor counsel, Mr. Zeigler are both attorneys of fine standing in this community, have been so for a number of years, more than 20 years. They are one [sic] of just a handful of lawyers in town that can accept Court appointed cases on Felony 2 charges. They have the requisite number of trials and meet the Public Defender's guidelines for those purposes. They are obviously extremely qualified and competent counsel.
 The court then inquired if the defendant needed assistance in securing the attendance of any witnesses. After argument and discussion, the court stated:
 Anybody that's already been called as a witness, we're obviously not gonna bring back in because he was given an opportunity to Cross-examine those people.
 Anybody from Cuyahoga County is not gonna be called. Irregularity as far as the charges are concerned, and the reason he's in prison, is not a defense to this charge anyway. I'm not gonna stop the trial and ask that records from Dade County be brought up here.
After the State rested its case, the defendant attempted to give an unsworn statement to the jury about the trial court's decision to proceed without hiring him a third attorney. The State objected, and the court sustained the objection. Defendant proceeded to have several documents marked for identification, but most of those documents were not received into evidence because the trial court determined them to be irrelevant to the escape charge.[1] At this point, the defendant stated "I have enough evidence, but the Court won't allow me to enter it," and rested his case.
In closing argument, the defendant accused the State of "denying me all my rights," and made several references to the court's decision to exclude evidence and to matters not admitted into evidence. After the court sustained multiple objections by the State and advised the defendant that he was beyond the bounds of proper closing argument, the defendant exclaimed, "I don't know how to do it. I just put everything in God's hands. Whatever happens happens." He declined to make any further argument.
The jury found defendant guilty of escape while detained for a felony of the first or second degree, and the trial court sentenced him to a term of six years incarceration. Defendant now appeals and asserts two assignments of error with the trial court's judgment.
 I. THE TRIAL COURT ERRED BY DENYING DEFENDANT-APPELLANT THE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH
AND FOURTEENTH AMENDMENT RIGHTS.
Under the Sixth Amendment to the United States Constitution, a criminal defendant has the right to serve as his own counsel. See, e.g., Faretta v. California (1975), 422 U.S. 806. However, prior to allowing a defendant to proceed pro se a trial court must generally ensure that the defendant has voluntarily, knowingly, and intelligently waived his right to counsel. See State v.Gibson (1976), 45 Ohio St.2d 366, paragraph one of the syllabus. Here, it does not appear that the defendant ever waived his right to counsel.
However, the court did appoint counsel to represent the defendant "at every stage of the proceedings." Crim.R. 44(A). It was the defendant who terminated his representation by both attorneys appointed to handle his case. In this situation, it was incumbent upon the defendant to demonstrate to the court justifiable cause for both the discharge of the appointed counsel and the request for appointment of new legal counsel. See Statev. Edsall (1996), 113 Ohio App.3d 337, 339, appeal denied77 Ohio St.3d 1514."[B]efore a motion for new counsel must be granted, the person making the motion must establish that that person and the attorney have no communication, cooperation or trust." Statev. Warren (1990), 67 Ohio App.3d 789, 798, citing State v. Pruitt
(1984), 18 Ohio App.3d 50, 57. "[A]n indigent defendant is entitled to the appointment of substitute counsel only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result." State v. Blankenship
(1995), 102 Ohio App.3d 534, 558, aff'd mem. 74 Ohio St.3d 522. Here, the defendant made no such showing, but merely indicated that he believed Mr. Mathews was unprepared. The trial court then offered the defendant the option of accepting appointed counsel or proceeding pro se.
In State v. Edsall (1996), 113 Ohio App.3d 337, the Summit County Court of Appeals faced a nearly identical situation, and observed:
 There exist points at which the process of administering justice must be balanced with the defendant's right to counsel. The right to have counsel assigned by the court does not impose on the court a duty to allow the accused to choose his own counsel, for the selection of counsel is within the sound discretion of the court. * * * * Another such point is reached here where the indigent defendant had the same appointed counsel over the entire three-month period before trial, and attempted to discharge that counsel on the original trial date (two days in advance of the actual trial) without articulating to the court a justification for so doing.
 A defendant may not defeat the process of administering justice by refusing to accept appointment of legal counsel — or discharge counsel previously appointed, as here — and also refusing to waive his constitutional right to counsel.
Id. at 340-41 (emphasis added; citations omitted). We find this reasoning persuasive. Any error that could possibly have resulted from the failure to appoint a third attorney in this case was caused solely by the defendant's own actions. The trial court took all precautions necessary to ensure that the defendant's rights were protected. The defendant's decision not to exercise those rights is not error attributable to the court. Accordingly, we overrule this assignment of error.
 II. THE DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT PROHIBITED HIS CLOSING ARGUMENT.
Trial courts generally give the parties wide latitude in closing argument. See, e.g., State v. Byrd (1987), 32 Ohio St.3d 79,82, cert. denied 484 U.S. 1036. Although courts have broad discretion to control the scope of argument, that "discretion is abused * * * if the court prevents defense counsel from making a point essential to the defense." United States v. Sawyer
(C.A.D.C. 1971), 443 F.2d 712, 713, quoted in State v. Pinkney
(1988), 36 Ohio St.3d 190, 194. Hence, if the defendant had been totally barred from arguing a point essential to his defense, such denial would constitute an abuse of discretion. Id. A review of the record reveals that the court sustained the prosecution's objections when the defendant attempted to argue facts not in evidence and to offer unsworn testimony. It therefore cannot be argued that the defendant was precluded from arguing points "essential to his defense."
Defendant also complains that the prosecution unfairly commented upon his decision to exercise his right to remain silent. At one point, the prosecutor objected to the defendant's persistent reference to facts outside the record, stating "Your Honor, I'm going to object unless the Defendant wants to take the stand and testify."
While the objection could have been worded more artfully, it is clear that the prosecutor was attempting to point out that if the defendant wished to the jury to consider specific testimony, it was incumbent upon him to introduce that testimony into evidence. The prosecutor's objection was therefore not manifestly intended and was not of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's Fifth Amendment rights. See, e.g., State v. Cooper
(1977), 52 Ohio St.2d 163, 173, vacated on other grounds,438 U.S. 911. Accordingly, we reject this argument, and overrule defendant's second assignment of error.
For the foregoing reasons, the judgment of the Marion County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT, P.J., and WALTERS, J., concur.
[1] The proffered documents consisted of signed prison complaint forms that were filed after defendant was apprehended in Florida, unsigned complaint forms predating his escape, a letter from the prosecutor to Mr. Mathews' dated August 4, 1998 describing a possible plan by the defendant to either fire or punch Mr. Mathews, letters from Mr. Mathews to the defendant discussing possible trial strategies and recommending that defendant accept a plea bargain, a postconviction petition from defendant's burglary conviction in Cuyahoga County, and a photograph of the defendant dated "October 4, 1996." A copy of defendant's plea of guilty to the charge of burglary in Cuyahoga County a copy of the transcript of defendant's plea hearing in Cuyahoga County were received into evidence by the court.