OPINION
Defendant-appellant, James M. Bay, appeals his conviction in the Clermont County Court of Common Pleas for theft by deception and tampering with records. We affirm the judgment of the trial court.
On February 11, 1998, appellant was indicted on one count of theft by deception in violation of R.C. 2913.02(A)(3) and one count of tampering with records in violation of R.C. 2913.42(A)(1). A bill of particulars filed on February 27, 1998 alleged that appellant "did from March 1, 1996, through August 31, 1997, receive $3,693.00 in public assistance benefits from the Clermont County Department of Human Services to which he was not entitled by failing to report a $15,000.00 lump sum payment received [on March 21, 1996] in settlement of law suit." The bill of particulars further provided that "on January 17, 1997, * * * [appellant] falsified an application for public assistance benefits by failing to report the lump sum payment * * *." Appellant pled not guilty to the charges. On September 11, 1998, the case was tried to a jury.
At trial, the parties stipulated that in early 1996, "appellant] and his counsel * * * received a check in the amount of $15,000 issued by the Scotsdale Insurance Company * * * represent[ing] a settlement agreement between the City of Blue Ash and [appellant] for a suit filed by [appellant] * * *. The check was made out to [appellant] and his attorney * * *. At the time of the issuance, [appellant] and his counsel executed a release absolving the City of Blue Ash of any further liability in the case, and outlining [appellant's] obligations with respect to the dissemination of information related to the settlement." The release specifically provided that "[appellant] * * * shall keep confidential the facts pertaining to the OCCURRENCE; the activities, pleadings, and proceedings during the course of the LITIGATION; and the terms of this Release, except when disclosure of such is otherwise required by law." (Emphasis sic.)
The parties further stipulated that on March 21, 1996, "[appellant] was tendered a check in the amount of $9,000, made out to [appellant] * * * and issued by the firm of his attorney * * *. This represented the settlement amount from the lawsuit filed by [appellant] against the City of Blue Ash after attorney's fees and expenses were deducted." Ruth Bay, appellant's mother, testified that the $9,000 check was tendered to appellant in her presence in the law office of appellant's attorney. Bay testified that after being tendered the check, appellant endorsed it and immediately transferred it to her as a reimbursement for money she had loaned him over the years. Bay testified that she invested the $9,000 by purchasing a certificate of deposit ("CD") in her name for $7,000, by putting $1,700 in her checking account, and by keeping $300 in cash. Bay testified that the bulk of the money was still invested in a CD.
Evidence at trial showed that between March 1996 and August 1997, appellant received public assistance benefits from the Clermont County Department of Human Services ("CCDHS") in the form of food stamps and a Medicaid card. At trial, the parties stipulated that during appellant's benefits reapplication process, both prior to and subsequent to the tendering of the settlement check, appellant "read or had read to him and understood fully all the terms of his rights and responsibilities in receiving benefits from [CCDHS], including his duty to report any income received to [CCDHS] within ten calendar days. * * * [Appellant] signed written copies of his rights and responsibilities on January 18, 1996, and January 17, 1997." Evidence at trial showed that appellant failed to report the settlement check to CCDHS. Rather, a copy of a benefits reapplication form signed by appellant on January 17, 1997 shows that when asked whether appellant had any lump sum information, whether he had transferred, sold or given away real property or any other resources within the previous two years, and whether appellant received unearned income such as money from another person or "other," appellant each time answered "no."
Marcella Brath, a case manager with CCDHS, testified that while appellant called CCDHS various times regarding his medical card or food stamps, he never reported the settlement check orally, by phone, or in writing. Jeff Shelton, an investigator for Clermont County Welfare Fraud Department, testified that he received an anonymous tip regarding the settlement check in July 1997. Based upon the tip, Shelton first subpoenaed records from the law firm that had represented the city of Blue Ash in its suit against appellant. These records showed that appellant had received a $9,000 lump sum payment. Thereafter, on August 26, 1997, Shelton interviewed appellant, who refused to talk about the settlement without an attorney. Following the interview, Shelton sent appellant a certified letter asking appellant to provide information as to how he had spent the $9,000. Appellant contacted Shelton and told him he wanted to talk to him about the settlement. However, when appellant subsequently met Shelton, he again refused to talk about the settlement. Appellant told Shelton that "it was something he couldn't talk about and wasn't going to tell [Shelton]."
Shelton testified that at that point, as he was unable to determine whether appellant would have been eligible to receive public assistance, he referred the case to the overpayment department to calculate the amount of benefits appellant received that he was not entitled to receive because of the unreported income. The overpayment was calculated to be in the amount of $3,693.13. Shelton testified he finally received information as to how the settlement had been spent when he received a letter on October 8, 1997 from a Legal Aid attorney appellant had contacted. The letter acknowledged that appellant had received $9,000 from the city of Blue Ash. Enclosed with the letter was a notarized statement from appellant's mother stating appellant had given the $9,000 to her.
At the close of the state's case, appellant moved for a judgment of acquittal under Crim.R. 29(A). The trial court denied the motion. At the close of the evidence, a jury found appellant guilty as charged and appellant was sentenced accordingly. This timely appeal follows.
On appeal, appellant presents three assignments of error in which he challenges his conviction for theft by deception.[1] In his first assignment of error, appellant argues that the state failed to establish a prima facie case of theft by deception. In his second assignment of error, appellant argues that as a result of the state's foregoing failure, the trial court erred in denying his Crim.R. 29(A) motion. Finally, in his third assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. At the heart of all three arguments is appellant's claim that the state not only failed to prove that appellant engaged in deception, it also failed to disprove appellant's lawful right to, entitlement to and possession of Medicaid and food stamp benefits from March 1996 through August 1997, and thus failed to prove that appellant was guilty of theft by deception.
Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus. This court's standard of review of a claim of insufficient evidence was set forth in State v. Jenks (1991),61 Ohio St.3d 259, at paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia
[1979], 443 U.S. 307, 99 S.Ct. 2781, * * * followed).
In order for a court of appeals to reverse a trial court's judgment on the basis that a verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the fact-finder's resolution of any conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380,389. The standard for reversal for manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
Appellant was convicted of theft by deception in violation of R.C.2913.02(A)(3) which states that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception[.]" R.C. 2913.01(A) in turn defines "deception" as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."
As already noted, at the heart of appellant's appeal is the claim that the state failed to disprove appellant's lawful entitlement and possession of the public assistance benefits, and thus failed to prove theft by deception. Appellant asserts that his "lawful possession of the Medicaid and food stamp benefits is a proper defense to R.C. 2913.02(a)(3) [sic]." We note, however, that appellant has not cited any case law or statute to support such assertion. We also disagree with appellant's claim that the state had the burden at trial to disprove appellant's lawful entitlement and possession of the benefits. Rather, based upon the clear language of R.C. 2913.01(A) and2913.02(A)(3), we find that the state had the burden to prove that appellant, with purpose to deprive CCDHS of property, knowingly obtained public assistance benefits by deception, that is, by knowingly deceiving, or causing CCDHS to be deceived by any false or misleading representation, by withholding information, or by any conduct, act, or omission that creates, confirms, or perpetuates a false impression in CCDHS.
R.C Chapter 5115 governs disability assistance and provides in relevant part that:
 The state department of human services shall adopt rules establishing application and verification procedures, reapplication procedures, and income, resource, * * * and other eligibility requirements for disability assistance.
* * *
 If a recipient of disability assistance * * * becomes possessed of resources or income in excess of the amount allowed under rules adopted by the state department under this section, or if other changes occur that affect the person's eligibility or need for assistance, the recipient shall notify the state department or county department of human services within the time limits specified in the rules. Failure of a recipient to report possession of excess resources or income or a change affecting eligibility or need within those time limits shall be considered prima facie evidence of intent to defraud under [R.C] 5115.15[.]
R.C. 5115.05. R.C. 5115.15 in turn governs recovery of erroneous payments, which it defines as "disability assistance payments, including disability assistance medical assistance payments, made to persons who are not entitled to receive them, including payments as a result of misrepresentation or fraud, and payments made due to an error by the recipient or by the county department of human services that made the payment."
Ohio Adm. Code Chapter 5101:1-39 governs Medicaid eligibility requirements. Ohio Adm. Code 5101:1-39-08 provides in relevant part that:
 (A) The role of income is a primary element in the medicaid eligibility determination.
* * *
 (2) A basic tenet of public assistance is that all income must be considered in determining the need of an individual for public assistance. * * * An individual who does not avail of himself of a potential income is presumed to fail to do so in order to make himself eligible for public assistance. Such nonutilization of income available upon request constitutes ineligibility.
* * *
 (H) For medicaid purposes, income is cash, income in-kind, or something of value which is received, available, and attributable to an individual. * * *
 (I) Receipt of cash * * * in a particular month is income to the individual for that month. Any portion of the income which is retained by an individual into the next month becomes a resource.
* * *
 (L) The burden of proof of sources and amounts of income and the responsibility of reporting changes in incomes to the CDHS is the applicant's/recipient's.
* * *
 (N) Income is divided into two categories: earned income and unearned income. Earned income consists of wages and net earnings from employment or self-employment. Unearned income includes all other income. * * *
* * *
 (P) Other applicable income which is exempt or disregarded are outlined in [Ohio Adm.Code] 5101:1-39-18.
Ohio Adm. Code 5101:1-39-275 governs lump sum payments as follows:
 A "lump-sum payment" is * * * a money payment which is not related to any time period, such as a death benefit or inheritance. A nonrecurring lump-sum payment is considered unearned income unless otherwise exempted or excluded. It is unearned income in the month received and a countable resource in the month following the month of receipt.
 (A) The following are some types of lump-sum payments that are considered unearned income:
* * *
(3) Judgments and out-of-court settlements.
A review of Ohio Adm. Code 5101:1-39-18 shows that appellant's unearned income in the form of an out-of-court settlement neither qualifies as to be disregarded under Ohio Adm. Code 5101:1-39-18(B) nor as exempt under Ohio Adm. Code 5101:1-39-18(D) through (O). Rather, all of the foregoing statutory provisions unequivocally show that appellant's receipt of the $9,000 settlement check qualified as unearned income which he, as a recipient of public assistance benefits, had the duty to report.
Eloise Rector is an overpayment specialist with CCDHS who determines whether an individual would have been eligible for the benefits he received. At trial, Rector testified that whenever a recipient of public assistance receives a lump sum that is greater than the allotted limit, it could mean that the recipient was not eligible for benefits and that there could be an overpayment. Rector stated that the resource limit was $1,500 for Medicaid and $2,000 for food stamps. Rector testified that if a recipient of public assistance benefits reports the money received within ten days of the receipt and verifies that the money was spent, there would not be or may not be an overpayment. Rector testified, however, that "if you [as a recipient of benefits] go for a long period of time or any period of time and you wait, and then you are reported or we find out about it and then you show you spent it, there is still an overpayment[,]" even if the recipient spent the money on the day he received it. Rector further testified that the overpayment period lasts "as long as [the recipient] receive[s] benefits or until it was reported and verified that it was spent." Rector stated that appellant was not entitled to receive benefits from March 1996 through August 1997 because of his failure to report the settlement check and verify it had been spent.
As already noted, the parties stipulated at trial that during appellant's reapplication process, including after the tender of the settlement check, appellant read or had read to him and fully understood all the terms and responsibilities of receiving benefits, including his duty to report any received income within ten days. The reapplication form signed by appellant on January 17, 1997 clearly and unequivocally states:
 You are responsible at all times for giving complete and correct information about yourself and members of your household. You must report to the county department of human services, within ten calendar days, any change in your circumstances such as * * * any household member's income changes[.]
 Food stamp penalty warning. * * * If any information is incorrect, your food stamps may be denied. Do not give false information or hide information to get food stamps. * * *
* * *
 You must report all required changes in your household circumstances within ten calendar days of the date you became aware of the change. * * *
 Knowingly giving false information to get food stamps can result in prosecution for perjury. Any member of your assistance group who breaks any of the above rules on purpose can be barred from the food stamp program for 6 months for the first violation, 12 months for the second, and permanently for the third violation; fined up to $250,000, imprisoned for up to 20 years, or both and subject to prosecution under other applicable federal laws. A court can also bar an individual from the food stamp program for an additional 18 months.
* * *
 Signature of person who completed this form. I received a copy of and I have read my rights and responsibilities, or they have been read to me, and I understand them. I agree to fulfill my responsibilities as described. * * *
* * *
 By my signature below, I declare under penalty of perjury that the information on this application * * * is true and complete to the best of my knowledge. I understand that the law provides penalty of fine or imprisonment (or both) for anyone convicted of accepting assistance he or she is not eligible for. I state under penalty of perjury that all of the information in this application is true and complete to the best of my knowledge.
It is undisputed that after appellant received the $9,000 check from his attorney and after he transferred it to his mother, appellant never reported it to CCDHS, even when Shelton confronted him about it. Yet, in his reapplication form, appellant denied receiving any unearned income other than social security, denied having any lump sum information, and denied transferring or giving away any resources within the two previous years.
Appellant argues that the state failed to demonstrate he engaged in "deception." We disagree. At trial, Brath, a case load manager with CCDHS, testified that appellant was made aware of his rights and responsibilities and the parties so stipulated. The reapplication form signed by appellant certified that he understood the public assistance eligibility rules and requirements. The document also expressly stated that appellant's signature affirmed that the answers provided were true and complete. Finally, appellant's signature acknowledged he was aware of criminal penalties for unlawfully receiving benefits.
The information provided on the reapplication form as certified by appellant was neither true nor complete as it did not disclose the $9,000 check received by appellant and transferred to his mother. While appellant may have believed he did not possess the check long enough to constitute income to be reported, we find he nevertheless engaged in deception as he denied transferring any resources within the previous two years. In addition, "[t]he fact that [appellant] could have filed a truthful application and received the same or similar benefits does not, in our view, negate the deception." State v. Crowder (2d Dist. Feb. 10, 1995), No. 14478, 1995 Ohio App. LEXIS 482, at *5.
Appellant also argues that he believed the release signed with the city of Blue Ash prevented him from making any disclosure as to the terms of the settlement. Appellant asserts that "[a]bsent any admission of guilt by the appellant, or the testimony of one no less closely associated with the appellant than his shadow," the state failed to prove that appellant acted with specific intent to deprive CCDHS of Medicaid or food stamp benefits.
Our response is threefold. First, appellant's belief as to what the release prohibited him from disclosing flies in the face of the language of the release itself. The release clearly and unequivocally states that appellant "shall keep confidential * * * the terms of this Release, except where disclosure of such is otherwise required by law." The applicable statutory provisions clearly require appellant or any other recipient of public assistance benefits to report any change of income, including an out-of-court settlement. See R.C. 5115.05 and Ohio Adm. Code5101:1-39-18 and 275. Second, R.C. 5115.05 clearly states that "[f]ailure of a recipient to report possession of excess resources or income or a change affecting eligibility or need within those time limits shall be considered prima-facie evidence of intent to defraud * * *." Finally, appellant's mistaken belief was a mistake of law, which is not a defense to a criminal charge. State v.Pinkney (1988), 36 Ohio St.3d 190, 198. A mistake of law occurs when "a person is truly acquainted with the existence or nonexistence of facts but is ignorant of or comes to an erroneous conclusion as to their legal effect * * *." Harville v. Franklin
(July 29, 1991), Warren App. No. CA91-01-003, unreported, at *8.
"In Ohio, it is a crime of theft by deception for a person to receive unentitled public-assistance payments by purposefully making false statements on benefit application forms." State v.Dungey (1st Dist. Oct. 21, 1992), No. C-920483, 1992 Ohio App. LEXIS 5346, at *4. In the case at bar, there is evidence that appellant falsified his reapplication form by not disclosing receiving and transferring to his mother the settlement check. There is also evidence that appellant was aware, and he so stipulated, of his duties and responsibilities as a recipient of public assistance benefits, including the duty to report any change in income. Finally, there is evidence that appellant received benefits as a result of the deception.
In accordance with the standards of review articulated above, we find that the state did prove beyond a reasonable doubt its case of theft by deception, and that the trial court had sufficient evidence before it to overrule appellant's Crim.R. 29 motion, made at the end of the state's case. Appellant's three assignments of error are accordingly overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] We note that in his reply brief, appellant argues for the first time with respect to his first assignment of error that the trial court erred in sentencing him for a fourth degree felony when the value of the property or services involved was less than the $5,000 statutory limit. We find that appellant's new sub-argument is improperly raised by way of reply brief. "The reply brief is * * * merely an opportunity to reply to the brief of the appellee. New assignments of error (i.e., those contained in a `further brief') may not be raised except with leave of court."Sheppard v. Mack (1980), 68 Ohio App.2d 95, 97. Appellant's new sub-argument is not appropriately before the court and will therefore not be considered.