OPINION
{¶ 1} On July 13, 2002, the Youngstown Police Department arrested Appellant, Anthony P. Taylor, for impersonating a peace officer while he was providing security at a drinking establishment in the city. The case proceeded to jury trial, and he was convicted of impersonating a peace officer in violation of R.C. § 2921.51(B), a misdemeanor of the fourth degree. R.C. §2921.51(G). Appellant timely appealed the December 27, 2002, decision entered in the Youngstown Municipal Court. Thereafter Appellant failed to file the transcript of proceedings and his brief in support for more than one year.
 {¶ 2} The State of Ohio did not file a reply brief in this case. Therefore, this Court may accept Appellant's statement of the facts and issues as correct and reverse the matter if Appellant's brief reasonably appears to sustain such action. App.R. 18(C).
 {¶ 3} A review of the trial transcript reveals the following: Youngstown Police Officer Frank Rutherford testified that on the night of July 13, 2002, he, along with other officers, responded to a complaint regarding unauthorized constables working at the Classic Bar in Youngstown, Ohio. The officers arrested one individual at the Classic, and thereafter went to Patsy's Bar, which is also in Youngstown. (Tr. pp. 1041-07.)
 {¶ 4} Upon arriving at Patsy's, Officer Rutherford observed Appellant standing in the parking lot near the entrance to the lounge. Appellant's attire resembled a peace officer's uniform. He was wearing black military tactical pants, boots, had an Ohio State Police Constable badge hanging from his neck, and was wearing a hat with a patch printed "Constable Ohio State Police." In fact, Appellant's attire closely resembled the task force uniform Rutherford was wearing that night. Rutherford's uniform consisted of camouflage military tactical pants, a tee shirt with "POLICE" printed on the back, and had his YPD badge hanging from his neck. Rutherford testified that Appellant's OSPC badge was "pretty much identical" to his Youngstown Police Officer's badge. Both badges depicted the official Ohio state seal. (Tr. pp. 103, 107-108, 110, 111-112.)
 {¶ 5} It is undisputed that Appellant was working for the Ohio State Police Constable Services Inc. ("OSPC") at the time of his arrest. Officer Rutherford testified that the OSPC has no jurisdiction and no police authority or powers in Youngstown. Appellant was not employed by the Youngstown Police Department ("YPD"). (Tr. pp. 108, 126.)
 {¶ 6} John Martin, supervisor of the certification and standards for the Ohio Peace Officers Training Commission, testified that the Ohio Peace Officers Training Commission ("OPOTC") regulates peace officers and private security officers in the State of Ohio. (Tr. pp. 128-129.)
 {¶ 7} In order to be a peace officer in Ohio, one must be appointed by an authorized appointing authority, such as a city, village, etc. An appropriately appointed individual must also be trained by a regulated OPOTC program. (Tr. p. 130.)
 {¶ 8} Martin testified that Appellant had a record with the OPOTC, which reflected that he attended a private security academic program in 1998. However, there was no indication that he ever completed the program. Appellant's record does not reflect that he was ever designated as an authorized peace officer in Ohio. (Tr. pp. 145, 148.)
 {¶ 9} Martin also testified that OSPC Services Chief and owner Leroy Dock, Appellant's employer, has no power to appoint peace officers in Ohio. (Tr. p. 157.)
 {¶ 10} Curtis M. Bryant, Jr., also part owner of OSPC Services, Inc., testified on Appellant's behalf. He indicated that OSPC Services, Inc. is a private company incorporated in Ohio and that Appellant is an OSPC employee. He also indicated that OSPC employees are police officers doing private security work and some police work. OSPC employees are not required by the company to complete the Ohio Police Officer's Training Academy. (Tr. pp. 173-176.)
 {¶ 11} Bryant also stated his belief that OSPC employees have the authority to effect an arrest if he or she witnesses criminal activity. However, OSPC Services, Inc. does not have a security license filed with the Ohio Department of Commerce. Bryant claims their arresting authority comes from the state based on the fact that this arresting authority is set forth in the company's articles of incorporation. (Tr. pp. 1801-83.)
 {¶ 12} Appellant asserts five assignments of error on appeal.
 {¶ 13} Appellant's first assignment of error asserts:
 {¶ 14} "The Defendant-Appellant was in fact a private policeman and thus could not be convicted of impersonating a peace officer or private policeman and thus the court erred in denying his Criminal Rule 29 motion for acquittal."
 {¶ 15} In a criminal prosecution, the state bears the burden of proving each element of the offense beyond a reasonable doubt. A defendant seeking a motion for acquittal under Crim.R. 29 is essentially challenging the sufficiency of the evidence presented by the state. The standard for evaluating the sufficiency of evidence is, "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 16} Appellant's first assignment of error contains no argument whatsoever. He merely states his assignment, but then fails to direct this Court's attention to anything in support, either by way of facts or law.
 {¶ 17} An appellate court is required to address only those issues that are both assigned as error and briefed. Chem. Bankof New York v. Neman (1990), 52 Ohio St.3d 204, 207,556 N.E.2d 490; Toledo's Great E. Shoppers City, Inc. v. Abde's Black AngusSteak House No. III, Inc. (1986), 24 Ohio St.3d 198, 202, 24 OBR 426, 494 N.E.2d 1101. App.R. 12(A)(2) authorizes a court of appeals to disregard any issue that is assigned, but not separately argued. Mitulski v. USS/Kobe Steel Co. (May 26, 1999), Lorain App. Nos. 98CA007085 and 98CA007105; CuyahogaFalls v. Vogel (Sept. 16, 1998), 9th Dist. No. 18826.
 {¶ 18} Regardless of Appellant's failures, this claimed error lacks merit. A review of the underlying facts reveals that a rational trier of fact could have found the essential elements of the underlying offense beyond a reasonable doubt.
 {¶ 19} Appellant was charged and convicted of impersonating a peace officer under R.C. § 2921.51(B), which provides: "No person shall impersonate a peace officer or a private police officer."
 {¶ 20} R.C. § 2921.51(A) provides the following definitions of the applicable terms:
 {¶ 21} "(1) `Peace officer' means a sheriff, deputy sheriff, marshal, deputy marshal, member of the organized police department of a municipal corporation, or township constable, who is employed by a political subdivision of this state, a member of a police force employed by a metropolitan housing authority * * * a member of a police force employed by a regional transit authority * * * a state university law enforcement officer * * * a veterans' home police officer * * * a special police officer employed by a port authority * * *, or a state highway patrol trooper and whose primary duties are to preserve the peace, to protect life and property, and to enforce the laws, ordinances, or rules of the state or any of its political subdivisions.
 {¶ 22} "(2) `Private police officer' means any security guard, special police officer, private detective, or other person who is privately employed in a police capacity.
 {¶ 23} "(3) `Impersonate' means to act the part of, assume the identity of, wear the uniform or any part of the uniform of, or display the identification of a particular person or of a member of a class of persons with purpose to make another person believe that the actor is that particular person or is a member of that class of persons."
 {¶ 24} The evidence presented at trial supports the finding that Appellant violated R.C. § 2921.51(B), which prohibits one from wearing the uniform or any part of the uniform, or displaying the identification of a peace officer, "with purpose to make another person believe that the actor is that particular person or is a member of that class of persons."
 {¶ 25} The essence of an impersonation offense pursuant to R.C. § 2921.51(B) is to prohibit individuals from acting in a manner consistent with those of a peace officer, which includes wearing the uniform, assuming the identity, or displaying the identification of a peace officer.
 {¶ 26} Notwithstanding Appellant's claim of lawful employment on the night in question, his attire closely resembled YPD task force uniforms, and he was displaying the identification of a peace officer in violation of R.C. § 2921.51(B). Pursuant to statute, it is possible for a lawfully employed security guard to be convicted of impersonation of a peace officer.
 {¶ 27} The evidence in the instant cause established that Appellant's attire on the night in question closely resembled a YPD's task force uniform. He was wearing military tactical pants, a hat marked Constable Ohio State Police, and an official looking badge hanging from his neck depicting the state seal. His badge and attire were nearly identical to the YPD task force uniform. (Tr. pp. 111, 114, 121.)
 {¶ 28} Thus, Appellant's first assignment of error lacks merit and is overruled.
 {¶ 29} Appellant's second assignment of error asserts:
 {¶ 30} "The Defendant-Appellant was in fact a private policeman and thus the Defendant-Appellant's conviction is against the manifest weight of the evidence."
 {¶ 31} To determine whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way creating a manifest miscarriage of justice. State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. If an appellate court finds that a verdict is against the manifest weight of the evidence, then the court must reverse the conviction and order a new trial. This, however, should only be done in exceptional cases when the evidence weighs heavily against the conviction. Id. citing State v. Martin (1983),20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.
 {¶ 32} As set forth previously, the evidence reveals that Appellant was employed by a private corporation that identified its employees as police and/or peace officers. However, Appellant's employer, OSPC Services, Inc., was not registered with the OPOTC and did not have the authority to appoint police and/or peace officers. (Tr. pp. 126, 157.)
 {¶ 33} Further, Appellant's attire and badge on the night in question gave the appearance that he was an authorized State of Ohio peace officer. He was wearing the uniform and displaying the identification of a peace officer in violation of the statute.
 {¶ 34} Thus, Appellant's second assigned error lacks merit since there is no indication that the jury clearly lost its way, creating a manifest miscarriage of justice.
 {¶ 35} Appellant's third assignment of error asserts:
 {¶ 36} "The Defendant appellant was engaged in a lawful purpose and thus he had a defense to the alleged impersonation thus the court erred in denying his Criminal Rule 29 motion for acquittal."
 {¶ 37} Again, the state bears the burden of proving each element of the offense beyond a reasonable doubt in a criminal prosecution. Again, the standard for evaluating the sufficiency of evidence is, "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, supra, at paragraph two of the syllabus.
 {¶ 38} Appellant claims in this assignment that he satisfied his burden in establishing an affirmative defense. R.C. §2921.51(F) provides an affirmative defense to the charge of impersonating an officer, which states: "It is an affirmative defense to a charge under division (B) of this section that the impersonation of the peace officer was for a lawful purpose."
 {¶ 39} Appellant has the burden to prove by a preponderance of the evidence that he is entitled to an affirmative defense. R.C. § 2901.05. Thus, he must have presented sufficient evidence establishing that he was acting for a lawful purpose while impersonating a peace officer. R.C. § 2921.51(F).
 {¶ 40} Appellant claims that he was acting lawfully since he was working for a bar in a security capacity and he was an authorized Ohio State Police Constable. However, Appellant does not and apparently cannot allege that he was actually a licensed private security officer. He simply claims that his private employment as a security officer was lawful, thus he was not impersonating an officer.
 {¶ 41} However, this Court has previously held that, "[a]cting as a security officer to protect drinking establishments and their patrons is a lawful endeavor if the individual is actually a licensed private security officer." R.C. § 4749.03 requires private security guard providers to be licensed. State v. Smith, 7th Dist. No. 02 CA 227,2004-Ohio-4285, ¶ 60, citing State v. Rutland,152 Ohio App.3d 59, 786 N.E.2d 530, 2003-Ohio-1425, ¶ 23.
 {¶ 42} In addition, even though the OSPC Services, Inc., may be a business incorporated in the State of Ohio, "its corporate form does not exempt it from complying with state laws. A corporation, no matter what its purpose, cannot hire an individual, [and] make him a constable * * *. The employees still must have the necessary license and comply with the applicable statutes." Rutland, supra, at ¶ 22.
 {¶ 43} Appellant in the instant cause failed to set forth any evidence demonstrating that OSPC Services, Inc. was a licensed private security provider or that he was a licensed security officer.
 {¶ 44} In addition, and even if we assume Appellant was lawfully trained and employed as a private security officer on the night in question, his appearance, including his badge depicting the official state seal, constitute sufficient evidence to conclude that he was impersonating a peace officer during his private employment duties. The use of the state's official seal combined with the words "Ohio State Police" reflect that Appellant was purporting to represent a public authority.
 {¶ 45} The Ohio Revised Code recognizes two types of constables. The first is a type of peace officer. R.C. §109.71(A) provides the definition of "peace officer," which includes, "township constable, who is commissioned and employed as a peace officer by a political subdivision of this state or by a metropolitan housing authority[.]" R.C. § 109.71(A)(1). The trial testimony reveals that Appellant was not commissioned or employed as a peace officer by a political subdivision. Thus, Appellant was not a township constable under R.C. § 109.71(A).
 {¶ 46} The second authorized type of constable is a court-appointed special constable. R.C. § 1711.35 and § 1901.141. R.C. § 1901.141(A) provides that court-appointed constables, "shall hold a valid certificate issued by the Ohio peace officer training commission." There was no evidence presented at trial reflecting that Appellant was court-appointed. Further, John Martin testified that Appellant's OPOTC record did not reflect that Appellant ever completed the requisite training program. (Tr. p. 147.)
 {¶ 47} Based on the foregoing, Appellant's third assignment of error lacks merit and is overruled.
 {¶ 48} In Appellant's fourth assignment of error, he claims:
 {¶ 49} "The Defendant appellant was engaged in a lawful purpose and thus he had a defense to the alleged impersonation thus the Defendant-Appellant's conviction is against the manifest weight of the evidence."
 {¶ 50} This assignment of error reiterates the argument and facts contained in Appellant's prior assignment. Since the evidence presented at trial does not support his claim that he was actually a licensed private security officer, this claimed error lacks merit. Further, the evidence presented at trial reflects that Appellant was impersonating a peace officer, and was not a private security officer. His act of wearing an official-looking uniform and badge depicting the state seal was an attempt to signify that he was a peace officer representing a state authority.
 {¶ 51} As such, this asserted error lacks merit.
 {¶ 52} Appellant's fifth and final assignment of error claims:
 {¶ 53} "The Trial Court erred by refusing to give the jury instruction requested by the Defendant-Appellant thus denying the Defendant-Appellant his due process rights under both the State and Federal Constitutions."
 {¶ 54} Appellant argues that the trial court erred in failing to provide the jury with his requested jury instruction relative to the affirmative defense of lawful purpose set forth in R.C. §2921.51(F). (Tr. p. 191.) He again claims that he was providing parking lot security on the night in question and that this constitutes a "lawful purpose." As such, Appellant believes he established the affirmative defense.
 {¶ 55} When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. State v. Wolons (1989),44 Ohio St.3d 64, 68, 541 N.E.2d 443. An, "`abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.
 {¶ 56} As set forth previously, R.C. § 2921.51(F) does provide an affirmative defense. This section states: "It is an affirmative defense to a charge under division (B) of this section that the impersonation of the peace officer was for a lawful purpose." {¶ 57} It is undisputed that the jury was advised of this "lawful purpose" defense. However, Appellant claims that the defense instruction should have been presented to the jury in the language his counsel requested, which involved some manipulation of the standard OJI instruction. Appellant argues that the standard OJI instruction leaves the impression that the accused concedes that he or she impersonated an officer. Thus, he asked to have the language altered. (Tr. p. 192.)
 {¶ 58} His requested instruction provided: "the Defendant maintains his innocence, but if found to have impersonated a police officer, his or her impersonation was for a lawful purpose." (Tr. p. 192.)
 {¶ 59} Instead of giving Appellant's modified version of the defense, the trial court provided the jury the OJI instruction: "The Defendant claims that his impersonation of a peace officer was for a lawful purpose. The Defendant's impersonation was for a lawful purpose if it was not otherwise prohibited by law and was not intended to mislead or deceive." (Tr. p. 230.)
 {¶ 60} It should be noted that Appellant's requested modification would have essentially altered the nature of the defense. A plain reading of the affirmative defense set forth in R.C. § 2921.51(F) reflects that one must be actually impersonating an officer before being entitled to the lawful purpose defense. Thus, the instruction provided by the trial court does not constitute an abuse of discretion.
 {¶ 61} Based on the foregoing, there is nothing reflecting that the trial court erred in failing to give Appellant's requested version of an instruction as to his claimed affirmative defense. Accordingly, Appellant's final assignment of error is overruled.
 {¶ 62} In conclusion, all of Appellant's assignments of error lack merit and are hereby overruled.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.